UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------

TRUSTEES OF THE NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS
PENSION, WELFARE, ANNUITY, AND
APPRENTICESHIP, JOURNEYMAN
RETRAINING, EDUCATIONAL AND
INDUSTRY FUNDS, *et al.*,

    Plaintiffs,

    -against-

ACCESS SOLUTIONS GROUP, LLC,

    Defendant.

17cv4679

OPINION & ORDER

---------------------------------------------------

WILLIAM H. PAULEY III, United States District Judge:

    Plaintiffs, employer and employee trustees of benefit funds (the "Funds") for individuals covered by the New York City District Council of Carpenters (the "Union"), move for a default judgment against Access Solutions Group, LLC ("Access"). For the reasons that follow, the Funds' motion is granted.

## BACKGROUND

    This is an ERISA action seeking contribution payments that Access's alleged predecessor, Sukhmany Construction, Inc. ("Sukhmany"), failed to pay pursuant to a collective bargaining agreement ("CBA") with the Union. When an audit revealed Sukhmany's delinquent contributions, the Funds commenced an arbitration against Sukhmany. (Complaint ("Compl."), ECF No. 1, at ¶ 11–12.) The Funds subsequently obtained an arbitration award, which was confirmed and entered as a judgment against Sukhmany in the amount of $215,992.33 (the "Sukhmany Judgment"). (Compl. ¶¶ 12–15.)

Thereafter, the Funds sought to enforce the Sukhmany Judgment. During that process, they discovered that Access was Sukhmany's alter-ego or successor. Both companies are owned and operated by Sandeep Boparai and Sunny Singh and share a common telephone number. (Compl. ¶¶ 16–17, 19–22.) Both entities also served a common business purpose—to perform scaffolding, sidewalk shed, hoist, and elevator work covered by the CBA's jurisdiction. (Compl. ¶¶ 17–18, 23, 29.)

On the heels of this discovery, in June 2017, the Funds initiated this action to recover the amounts owed under the Sukhmany Judgment, compel Access to submit its books and records for an audit, and to recover any additional contribution balances due during and as a result of such audit. (Compl. ¶¶ 30–41.) On June 23, 2017, the Funds effected service of their complaint on Access. (ECF No. 7.) On September 8, 2017, the Funds appeared before this Court for an initial pretrial and pre-motion conference regarding their request to file a motion for default judgment. At that conference, this Court established a briefing schedule on the Funds' motion for default judgment, and provided Access—which failed to appear—an opportunity to file an opposition. (ECF No. 12.) On September 11, 2017, the Funds obtained a certificate of default from the Clerk of Court. (ECF No. 13.) On October 6, 2017, the Funds filed their motion for default judgment. Access did not file any opposition and has not appeared in this action.

## DISCUSSION

I. Standard

Federal Rule of Civil Procedure 55 establishes a two-step process to enter default judgments. First, the Clerk of Court must enter the absent party's default. (See ECF No. 13.) Second, the non-defaulting party must move for a default judgment. A default is an admission of

all well-pleaded allegations in the complaint, except those regarding damages. Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). "A default also effectively constitutes an admission that the damages were proximately caused by the defaulting party's conduct: that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged." Trs. of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Co-op., Pension and Welfare Funds, 2015 WL 1221500, at *3 (E.D.N.Y. Mar. 9, 2015).

II. Joint and Several Liability—Alter Ego Relationship

The Funds seek a finding that Access is the alter ego or successor to Sukhmany so they can enforce the Sukhmany Judgment against Access. Of course, if Access is found to be an alter ego or successor to Sukhmany, such a finding will also allow the Fund to audit Access's books and records and determine whether additional contributions should be remitted.

Joint and several liability may exist under two different theories. Under the single employer doctrine, a CBA binding one employer may be enforced against a non-signatory employer if (1) the two employers constitute a "single employer" and (2) the employees of the companies constitute a single appropriate bargaining unit. See Brown v. Sandimo Materials, 250 F.3d 120, 128 n.2 (2d Cir. 2001). "Separate companies are considered a single employer if they are part of a single integrated enterprise." Lihli Fashions Corp. v. NLRB, 80 F.3d 743, 747 (2d Cir. 1996).

The second theory, the alter ego doctrine, "while having the same binding effect on a non-signatory as the single employer/single unit doctrine, is conceptually distinct." Truck Drivers Local Union No. 807 v. Reg'l Import & Export Trucking Co., 944 F.2d 1037, 1046 (2d Cir. 1991). "The purpose of the alter ego doctrine in the ERISA context is to prevent an

employer from evading its obligations under the labor laws through a sham transaction or technical change in operations." Ret. Plan of UNITE HERE Nat'l Ret. Fund v. Kombassan Holding A.S., 629 F.3d 282, 288 (2d Cir. 2010) (internal quotation marks and citations omitted). "To protect employee benefits, courts observe a general federal policy of piercing the corporate veil when necessary." Kombassan Holding, 629 F.3d at 288. The Funds advance this theory in support of their argument that Access is an alter ego or successor to Sukhmany.

Courts should consider a number of factors in assessing whether alter ego status exists: "whether the two enterprises have substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership." Goodman Piping Prods, Inc. v. NLRB, 741 F.2d 10, 11 (2d Cir. 1984). Additionally, "[a]lthough the alter ego doctrine is primarily applied in situations involving successor companies, where the successor is merely a disguised continuance of the old employer, it also applies to situations where the companies are parallel companies." Mass Carpenters Cent. Collection Agency v. Belmont Concrete Corp., 139 F.3d 304, 307 (1st Cir. 1998).

The Funds' complaint adequately alleges an alter ego relationship between Access and Sukhmany. Both companies share the same management. (Compl. ¶¶ 12–14.) They have an identical business purpose, which is to provide scaffolding, sidewalk shed, hoists, elevators, and related building and construction services. (Compl. ¶¶ 13–14.) They allegedly use the same equipment, vehicles, and facilities, and operate out of the same location using the same phone number. (Comp. ¶¶ 14–15, 25.) They employ the same workers indiscriminately without any regard for corporate formalities or maintaining separate records. (Compl. ¶¶ 25–26.) These workers are deployed to a shared customer base. (Compl. ¶¶ 12–14.) Finally, both Access and

4

Sukhmany performed work within the Union's jurisdiction that was covered by the CBA. (Compl. ¶¶ 18, 24.)

Based on the host of similarities between the two companies, it appears that Sukhmany formed Access "for the purpose of avoiding Sukhmany's contractual and statutory obligations to the Funds, by having Access perform" CBA-covered work without complying with the terms of the CBA. (Compl. ¶ 27.) Indeed, Access was incorporated in July 2015, just months before an arbitrator issued a $203,821.55 award against Sukhmany for its failure to make contributions. (Compl. ¶¶ 13, 16.) Such actions are precisely why the alter ego doctrine exists— to prevent an employer from its evading its obligations under the labor laws through a technical change in operations. Div. 1181 Amalgamated Transit Union–N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ., 2017 WL 3738741, at *3 (S.D.N.Y. Aug. 30, 2017). Taking the allegations of the Complaint as true, the Funds sufficiently allege that Access is an alter ego of Sukhmany.

Having found the existence of an alter ego relationship, the next step of the inquiry is to assess whether Access faces joint and several liability for Sukhmany's obligations under the CBA. "In the context of collective bargaining agreements governed by ERISA, determining that an entity is an alter ego signifies that, for all relevant purposes, the non-signatory is legally equivalent to the signatory and is itself a party to the collective bargaining agreement." Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund v. B&L Moving and Installation, Inc., 2017 WL 4277175, at *5 (S.D.N.Y. Sept. 26, 2017). Thus, a non-signatory—Access—is jointly and severally liable for any judgment rendered against the signatory—Sukhmany—arising from the signatory's breach of the CBA. Access is "deemed to be legally equivalent to [Sukhmany]," and thus is jointly and severally liable for all

amounts owed under the Sukhmany Judgment plus applicable post-judgment interest. B&L Moving, 2017 WL 4277175, at *5. Post-judgment interest "is mandatory on awards in civil cases as of the date judgment is entered." Lewis v. Whelan, 99 F.3d 542, 545 (2d Cir. 1996) (citing 28 U.S.C. § 1961(a)).

III. Audit of Access's Books and Records

The Funds also seek injunctive relief in the form of an order directing an audit of Access's book and records. Because Access performed work covered by the CBA, the Funds claim that it is required to make contributions relating to such work. (Compl. ¶ 37.) With ample reason to believe that Access is in violation of the CBA, the Funds base this request for injunctive relief on the irreparable harm they would suffer if they are deprived of auditing Access's books and records. Absent an audit, they claim there is no way of determining the amount of Access's delinquent contributions.

Courts may award equitable relief as appropriate in an ERISA action brought by a fiduciary for or on behalf of a benefit plan to enforce rights under ERISA. Though "injunctive relief does not follow automatically upon a finding of statutory violations," a plaintiff in an ERISA action seeking injunctive relief must "show irreparable harm and the absence of an adequate remedy at law." Local Union No. 40 of the Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers v. Car–Wi Constr., 2015 WL 690811, at *23 (S.D.N.Y. Feb. 18, 2015). Courts routinely grant requests for an audit of books and records to determine what the audited entity owes under the collective bargaining agreement. Car–Wi Constr., 2015 WL 690811, at *23.

Here, in addition to establishing an alter ego relationship with Sukhmany, the Funds allege that Access independently evaded its obligations under the CBA from the date on

6

which it was incorporated through the present. (Compl. ¶¶ 37–38.) With no other way to ascertain Access's delinquent contributions, the Funds have satisfied the applicable standards for granting their requested injunction. Put another way, without an audit, Access will be irreparably harmed because it will be deprived of calculating the delinquent contributions it is owed under the CBA.

Accordingly, Access is directed to furnish its books and records to the Funds by December 11, 2017 for the purpose of conducting an audit to determine contributions relating to CBA-covered work performed from July 16, 2015 to the present. Additionally, the Funds may, within thirty days from the completion of the audit, make further submissions to this Court regarding damages arising from delinquent contributions identified in the audit period.

IV. Attorneys' Fees

The Funds request attorneys' fees and costs in connection with prosecuting this action. Indeed, ERISA provides that when an employee benefit fund prevails in a legal action, the defendant bears the burden of paying legal costs. 29 U.S.C. § 1132(g)(2). In determining appropriate attorneys' fees, courts first calculate the lodestar—the "product of a reasonable hourly rate and the reasonable number of hours required by the case." Millea v. Metro–North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011). "The lodestar figure includes most, if not all, of the relevant factors constituting a reasonable attorney's fee." Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 547 (2010).

The Funds seek attorneys' fees in the amount of $7,342.50 for 33.40 hours of work in this action, along with $437.17 in costs. The records submitted in support of the attorneys' fees and costs request reflect that the Funds' attorneys billed at a rate anywhere from $225 to $300 per hour, and that their legal assistants billed at a rate of $100 per hour.

(Declaration of Claire Vinyard in Support of Plaintiffs' Motion for Default Judgment ("Vinyard Decl."), ECF No. 16, Ex. 18.) These rates are reasonable. Townsend v. Benjamin Enters., Inc., 679 F.3d 41, 59 (2d Cir. 2012); B&L Moving, 2017 WL 4277175, at *7 (finding reasonable rates ranging from $100 to $300 for the very same law firm that represents the Funds).

Moreover, the total hours worked is reasonable and in line with the relatively light demands in prosecuting this case. The brunt of the work is tied to preparing the Funds' complaint and motion for default judgment. (Vinyard Decl., Ex. 18, at 1, 4.) In B&L Moving—which mirrors virtually the same procedural posture as this action—the court there reduced attorney hours in half from 60.7 to 30.35 hours on grounds that the case "was not unusually complex; that it did not demand great resources; that it involved no contested litigation; and that there were no particular timing demands on the case." B&L Moving, 2017 WL 4277175, at *7. The hours billed in this case consistently fall in line with the hours awarded in B&L Moving, further validating the reasonableness of the time expended in prosecuting this action.

Finally, fee awards "normally include those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients." Reichman v. Bonsignore, Brignati & Mazzota P.C., 818 F.2d 278, 283 (2d Cir. 1987). The requested $473.17 represents routine, reasonable expenses—with the lion's share being the court filing fee—and should be included in the total fee award.

## CONCLUSION

For the foregoing reasons, the Funds' motion for default judgment is granted. Access is jointly and severally liable for the Sukhmany Judgment in the amount of $215,992.33. By December 11, 2017, Access is directed to furnish its books and records to the Funds for the purpose of conducting an audit for any work performed under the CBA between July 16, 2015

8

and the present.  Further, within 30 days from completion of the audit, the Funds may move for additional damages arising from any delinquent contributions identified by the audit.

The Funds are also awarded attorneys' fees and costs in the amount of $7,779.67.  Finally, the Funds are granted post-judgment interest to accrue at the statutory rate prescribed by 28 U.S.C. § 1961.  The Clerk of Court is directed to terminate the motion pending at ECF No. 14.

Dated: November 13, 2017  
      New York, New York

SO ORDERED:

_____  
WILLIAM H. PAULEY III  
U.S.D.J.